**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

JAMES SHERMAN, as )
Administrator of the Estate of )
DAWN WORTHY, )
             )
             )
       Plaintiff, )
             )
v. )       C.A. No. N10C-08-178 VLM
             )
THE STATE OF DELAWARE )
DEPARTMENT OF PUBLIC )
SAFETY, )
             )
       Defendant. )

**ORDER**

Submitted: April 24, 2017
Decided: May 8, 2017

*Upon Consideration of Plaintiff's Motion for New Trial and
Motion to Set Aside Verdict.* **DENIED.**

**AND NOW TO WIT**, this 8th day of May, 2017, upon consideration of

Plaintiff, James Sherman, as Administrator of the Estate of Dawn Worthy,

("Plaintiff")'s Motion for New Trial and Motion to Set Aside Verdict ("Motions"),

Defendant, The State of Delaware Department of Public Safety, ("State")'s

responses thereto, the parties' positions at oral argument, and the record in this

case, **IT IS HEREBY ORDERED** that Plaintiff's Motions are **DENIED** for the

following reasons:

1. On January 19, 2017, a Superior Court jury returned a verdict in favor of the State following a three-day civil trial. The jury determined that the State was not liable for the allegedly tortious conduct of a police officer under the theory of *respondeat superior* for engaging in oral sex in his police car with a woman arrested for shoplifting. The jury did not hear directly from the woman or the police officer, as both died due to a drug overdose and suicide, respectively.

2. On February 1, 2017, Plaintiff filed the present post-trial Motions, moving the Court for a new trial on the basis that the jury verdict was against the great weight of evidence, or that the jury instructions were erroneous and undermined the jury's ability to intelligently reach a verdict.

3. This case has undergone a protracted period of litigation. The allegations stem from March 2009, where it was alleged that Officer Giddings sexually assaulted Plaintiff's decedent, Dawn Worthy, after he arrested her for shoplifting at the Christiana Mall. The case has twice been appealed and returned to the Superior Court. Many of the same issues in Plaintiff's present Motions were the focus of the prior appeals to the Supreme Court.[1]

---

[1] *See Sherman v. State*, 133 A.3d 971 (Del. 2016) (affirming in part and reversing in part entry of summary judgment); *Doe v. State*, 76 A.3d 774 (Del. 2013) (reversing entry of summary judgment to defendant on scope of employment), *reh'g denied* (Oct. 8, 2013).

4.      Plaintiff's Motion for a New Trial and Motion to Set Aside Verdict arise under Delaware Superior Court Civil Rule 59(a).[2]  "A new trial may be granted as to all [parties and/or issues] in an action in which there has been a trial for any of the reasons for which new trials have heretofore been granted in the Superior Court."[3]  One such reason is an asserted error in the jury instructions.  "A trial court's charge to the jury will not serve as grounds for reversible error if it is 'reasonably informative and not misleading, judged by common practices and standards of verbal communication.'"[4]  If, when taken as a whole, the "alleged deficiency in the jury instructions undermined the jury's ability to intelligently perform its duty in returning a verdict," then a new trial is warranted.[5]  Another reason for a new trial arises when the jury verdict is against the great weight of evidence.  "On a motion to grant a new trial the verdict must be manifestly and palpably against the weight of the evidence or for some reason, or a combination of

---

[2] *See* DEL. SUPER. CT. CIV. R. 59(a).

[3] *Id.*

[4] *Probst v. State*, 547 A.2d 114, 119 (Del. 1988) (quoting *Baker v. Reid*, 57 A.2d 103, 109 (Del. 1947)).  *See also Riggins v. Mauriello*, 603 A.2d 827, 830 (Del. 1992); *Culver v. Bennett*, 588 A.2d 1094, 1096 (Del. 1991); *Flammer v. State*, 490 A.2d 104, 128 (Del. 1984).

[5] *Lisowski v. Bayhealth Med. Ctr., Inc.*, 2016 WL 6995365, at *2 (Del. Super. Nov. 30, 2016) (quoting *Culver*, 588 A.2d at 1098).  *See also Adkins v. State*, 149 A.3d 517, 2016 WL 5940363, at *3 (Del. 2016) (TABLE) ("In evaluating the propriety of a jury charge, the entire instruction must be considered with no statement to be viewed in a vacuum.") (quoting *Flamer*, 490 A.2d at 128); *Ireland v. Gemcraft Homes, Inc.*, 29 A.3d 246, 2011 WL 4553166, at *3 (Del. 2011) (TABLE) ("In evaluating the propriety of a jury charge, the jury instructions must be viewed as a whole.").

3

reasons, justice would miscarry if it were allowed to stand."[6] The Court must defer to the jury unless "'the evidence preponderates so heavily against the jury verdict that a reasonable jury could not have reached [the] result' that this jury did."[7]

5. During oral argument on April 24, 2017, Plaintiff's counsel stated that both Motions largely overlap. As to both, he explained that, while the jury instructions were accurate statements of the law, they were "not helpful" to the jury because they failed to elucidate the distinction—in the course and scope of employment instruction—between "general" and "specific" wrongful conduct. Plaintiff's counsel asserted that Officer Giddings' "general" conduct (i.e., his duty to arrest and transport detainees) should have been expressly contrasted with his "specific" conduct (i.e., the sexual act). Plaintiff's counsel contends that the Supreme Court's first decision in this case, *Doe v. State*,[8] contained a passing inference that implied the Court must instruct the jury on this general/specific distinction. Other than this inference, Plaintiff's counsel concedes that there is no case law to support his argument on this issue; instead, he appeals to the Court's discretion to grant a new trial under Rule 59(a).

---

[6] *McCloskey v. McKelvey*, 174 A.2d 691, 693 (Del. Super. 1961) (citing *E. Air Lines Inc. v. Union Trust Co.*, 239 F.2d 25 (D.C. Cir. 1956); *Wade v. Lane*, 189 F.Supp. 661, 663 (D.D.C. 1960)).

[7] *Owens v. Kelly*, 2003 WL 1919351, at *1 (Del. Super. Apr. 22, 2003) (alteration in original) (quoting *Storey v. Camper*, 401 A.2d 458, 465 (Del. 1979)).

[8] 76 A.3d 774 (Del. 2013).

4

6. The Court first addresses Plaintiff's Motion to Set Aside the Verdict based on the "great weight of the evidence." Plaintiff's argument in this Motion is threefold. First, Plaintiff contends that the "overwhelming weight of the evidence was that there was no consent [to the sexual act], only coercion."[9] Thus, the dearth of evidence regarding Ms. Worthy's consent to Officer Giddings' sexual act means that "no reasonable jury could have found" that Officer Giddings did not commit either an assault or battery; a necessary finding that the jury needed to make in order to find liability against the State. Second, Plaintiff's argument dovetails with his Motion for a New Trial: the great weight of evidence necessitates a finding that Officer Giddings was operating within the scope of his employment with the State at all times relevant to the allegations of sexual assault—also a finding needed for Plaintiff to prevail.[10] Finally, he argues that evidence on the foreseeability of Officer Giddings' conduct was overwhelming and warrants a new trial.[11]

7. In response, the State argues that, first, there was sufficient evidence in the record for the jury to consider the factual inconsistencies from both Officer Giddings and Ms. Worthy regarding the events that led up to the sexual act.[12] Second, the State counters Plaintiff's argument on the evidence regarding scope of

---

[9] Plaintiff's Motion to Set Aside Verdict at 3 (Feb. 1, 2017).

[10] *See id.* at 5-8, 10-12.

[11] *See id.* at 8-10.

[12] *See* Defendant's Response to Plaintiff's Motion to Set Aside Verdict at 2-4.

employment.[13]   Principally, the State argues that Plaintiff conflates the Supreme Court's prior holdings in this case: in both appeals, the Supreme Court addressed motions for summary judgment, where the Court necessarily must take all inferences in favor of the non-moving party.  At trial, however, the State contends that it contested all aspects of vicarious liability and the jury was free to reject Plaintiff's argument.   Finally, the State maintains that the jury was free to "determine foreseeability in favor of Defendant based upon the disputed evidence."[14]

8.      The Court finds no merit in Plaintiff's Motion to Set Aside Verdict. There is no question that the sexual act was wrongful.  Nevertheless, one issue for the jury to determine was whether Officer Giddings' conduct amounted to a tort for which the State could be held vicariously liable.[15]   On this issue, the jury heard limited—and inconsistent—versions of the alleged tortious conduct through statements made by the now-deceased individuals.  As to Officer Giddings, the jury heard his varying versions of the incident: from denying the act ever occurred,

---

[13] *See id.* at 4-6.

[14] *Id.* at 6.

[15] At many times in this litigation, the line between the criminal and civil arena blurred.  One example was Plaintiff's insistence in charging the jury with the Pattern Jury Instruction for Rape Second Degree.  The Court declined to read this instruction, since the jury was not being asked to determine the guilt or innocence of Officer Giddings.  The Court, on more than one occasion, was required to remind Plaintiff's counsel that this case was a civil—and not a criminal—case.

to not recalling having received oral sex, and finally, to maintaining that it was Ms. Worthy's idea to engage in the sexual act.

9. Despite Officer Giddings' inconsistent statements, Ms. Worthy's statements proved similarly problematic. During the investigation into the incident, Ms. Worthy made inconsistent statements about the sequence of events leading up to the alleged sexual assault. Her statements were not easily reconcilable with additional testimony from live witnesses presented at trial. For instance, Ms. Worthy's credibility was impeached with evidence from Sergeant Maher, who testified that an investigation into Ms. Worthy's recollection of the incident did not comport with the physical characteristics of Officer Giddings' vehicle. Because there was sufficient evidence to tip in favor of either side on whether a tortious act was committed by Officer Giddings, the jury's verdict is entitled to considerable deference.[16]

10. Additionally, and more to the crux of what the jury was called upon to decide, there was sufficient evidence upon which the jury could find that Officer Giddings was not acting within the scope of his employment or that his conduct was not reasonably foreseeable. In *Doe v. State*, the Supreme Court held that summary judgment was not appropriate where a factual dispute existed regarding whether Officer Giddings acted within the scope of his employment with the State

---

[16] *See Storey v. Camper*, 401 A.2d 458, 465 (Del. 1979).

7

when he allegedly assaulted Ms. Worthy. The *Doe* Court stated that the Superior Court was required to broadly construe the four scope-of-employment factors, which are typically left to a jury to decide.[17] However, at trial, the jury is free to accept or reject Plaintiff's proffered evidence on each of the four factors where there is sufficient evidence for the jury to do so.[18] To wit, in *Sherman v. State*,[19] marking this case's second appeal to the Supreme Court on summary judgment, the *Sherman* Court denied summary judgment to Plaintiff on the issue of scope of employment.[20] Specifically, the Supreme Court stated that the issue of course and scope of employment was for the jury to decide. And so they did.

11. The evidence presented at trial on this issue included Officer Giddings' failure to follow standard operating procedures ("SOP") or protocol and his failure to take Ms. Worthy directly to the Justice of the Peace Court on her outstanding capias. The State submitted evidence that Officer Giddings was unavailable for further police calls until much later that evening; again, in violation of SOP. The jury was free to consider that the location of the alleged assault occurred behind a hill of dirt on a construction site, arguably outside the space and

---

[17] *Doe v. State*, 76 A.3d 774, 777 (Del. 2013).

[18] *See id.* ("The third factor—whether Giddings was activated in part to serve his employer—has been construed broadly as a matter *for the jury to decide.*") (emphasis added) (citations omitted)).

[19] 133 A.3d 971 (Del. 2016).

[20] *See id.* at 978-79.

time limits of his employment. Moreover, the evidence suggested that Officer Giddings may have acted exclusively with the intent to serve himself and not the employer.

12. Finally, Plaintiff argues there was overwhelming evidence on the issue of foreseeability to warrant a new trial. This Court disagrees. The only evidence presented regarding the foreseeability of sexual assault of arrestees by on-duty officers came from Colonel MacLeish's testimony that, as of 2009 when he retired from the Delaware State Police, an "extremely small percentage" of officers engaged in sexual misconduct during an arrest. However, two of Officer Giddings' supervisors testified that they were unaware of any allegations of sexual misconduct against him prior to the incident in question, and therefore, the jury was free to consider all of the testimony from the various law enforcement representatives on the issue of foreseeability. The Court finds that the evidence at trial supports a jury verdict in favor of the State; a defense verdict was not against the great weight of evidence.

13. The Court now turns to Plaintiff's Motion for a New Trial based on the alleged errors in the jury instructions. As discussed above, Plaintiff's Motion principally attacks the Court's instructions regarding course and scope of employment.[21] On this issue, Plaintiff argues that the Court "relied [too]

---

[21] *See* Plaintiff's Motion for New Trial at 4-6 (Feb. 1, 2017).

extensively on form instructions. . . ."[22] While conceding that the elements of scope of employment and the associated dual purpose rule were appropriately included in the Court's instruction,[23] Plaintiff argues that the Court's failure to define what the relevant "service" referred to in the instruction mislead the jury into connoting the word "service" with Officer Giddings' alleged sexual assault of Ms. Worthy.[24]

14. Furthermore, Plaintiff argues that the Court's failure to instruct the jury with his proffered instruction on the foreseeability of police officer sexual misconduct, coupled with the State's ability to argue that the conduct was unforeseeable, was in error.[25] Additionally, Plaintiff contends, as he did during the prayer conference, that lack of foreseeability is an affirmative defense for which the State bore the burden of proof.[26] Finally, Plaintiff argues that the failure to instruct the jury with Plaintiff's proposed "No Consent" instruction was in error.[27]

---

[22] *Id.* at 1.

[23] *See id.* at 4.

[24] *See id.* at 5.

[25] *See id.* at 6-9.

[26] *See id.* at 9-10. *See* Transcript of Prayer Conference at 3:1-4:1 (Jan. 19, 2017) [hereinafter Tr.].

[27] *See* Plaintiff's Motion for New Trial at 10.

15. The Court finds that Plaintiff's Motion fails to present grounds for why the jury's verdict should be disturbed in this case. There are several problems with Plaintiff's arguments in favor of a new trial.

16. First, and perhaps most importantly, Plaintiff's fastidious attention to the general/specific distinction overlooks the pattern jury instructions and the Court's attempt to meld the *Doe* Court's holding into a cohesive and intelligent instruction to the jury. Plaintiff concedes that the Court's instruction on course and scope of employment is entirely consistent with Delaware law and substantially supplements the pattern instructions for this type of instruction.[28] Importantly, the instruction given is nearly identical to the language the *Doe* Court used in discussing the Restatement (Second) of Agency § 228.[29] Were the Court to augment that language and add Officer Giddings' "specific conduct," as suggested by Plaintiff, the result would be an importation of the summary judgment inferences in *Doe* into the trial setting. This would unnecessarily interpose the Court into the jury's determination of scope of employment, undermining the jury's role as "a cross-section of the public especially adapted to judge the actions

---

[28] *See* DEL. SUPER. P.J.I. CIV. § 18.5 (2000) (revised Aug. 15, 2006) ("Agent Tending to Personal Affairs"). As an aside, "[A] party does not have a right to a particular instruction in a particular form." *Corbitt v. Tatagari*, 804 A.2d 1057, 1062 (Del. 2002) (citing *Haas v. United Techs. Corp.*, 450 A.2d 1173, 1179 (Del. 1982); *Chavin v. Cope*, 243 A.2d 694 (Del. 1968)).

[29] *See Doe v. State*, 76 A.3d 774, 777 (Del. 2013).

of people in the light of what is reasonable."[30] Therefore, the implemented jury instruction on course and scope of employment was "reasonably informative and not misleading;" it did not undermine the jury's ability to intelligently reach a verdict in this case.[31]

17. Second, Plaintiff's Motion is further misguided because many of his proffered jury instructions failed to comply with Delaware law and called for the Court to comment on the evidence.[32] A prime example is Plaintiff's proffered jury instruction regarding Colonel MacLeish and the testimony concerning the foreseeability of sexual misconduct by officers during arrest. Plaintiff's proposed instruction read:

> In this case, Colonel MacLeish, the former head of the Delaware State Police in 2009, testified. If you find that Colonel MacLeish was aware of a general problem within law enforcement that some police officers had sexually assaulted people in their custody then it was not completely unforeseeable to the State that such wrongful conduct could occur.
>
> The general problem of sexual abuse by arresting police officers does not have to have involved the State Police or any police in Delaware—it is enough if on a

---

[30] *Id.* at 776 (quoting *Draper v. Olivere Paving & Constr. Co.*, 181 A.2d 565, 571 (Del. 1962)).

[31] *Probst v. State*, 547 A.2d 114, 119 (Del. 1988) (quoting *Baker v. Reid*, 57 A.2d 103, 109 (Del. 1947)).

[32] *See, e.g.*, Plaintiff's Motion for New Trial at Ex. B (Plaintiff's proposed instruction on "Knowledge of Col. MacLeish"); *id.* at Ex. E (Plaintiff's proposed instruction on "Complete Unforseeability as an Affirmative Defense"). *See also* State's Response to Plaintiff's Motion for New Trial at 2 (Feb. 15, 2017).

12

nationwide basis there was a general problem. Also, the problem did not have to involve a majority of police officers, it is enough if it were a very small number of officers.[33]

The above instruction is not a proper statement of the law. Hence, the Court stands by its decision to deny Plaintiff's request to give this instruction.

18. Third, at the pretrial conference and prayer conference, the Court considered and rejected Plaintiff's argument that it was the State's burden to prove "lack of foreseeability." The Court found that *Draper v. Olivere Paving & Construction Co.*[34] did not stand for the proposition that "lack of foreseeability" under § 228 was an affirmative defense.[35] Nothing in Plaintiff's Motion changes this Court's ruling that proof of this element fell on the Plaintiff to prove.

19. Finally, on the issue of consent, Plaintiff—again—simply restyles prior arguments. For the reasons stated above, Ms. Worthy and Officer Giddings' versions of the incident conflicted in several material respects. Thus, the Court declined to instruct the jury with Plaintiff's proposed instruction and permitted both parties to argue in their closing arguments their versions of the events based

---

[33] Plaintiff's Motion for New Trial at Ex. B.

[34] 181 A.2d 565 (Del. 1962).

[35] Plaintiff's contention rested on a solitary line in *Draper*. *See id.* at 571 ("If there is any proof to that effect, it was encumbent [sic] upon Olivere as the moving party to produce it." (citing *Ebersole v. Lowengrub*, 180 A.2d 467 (Del. 1962)). This Court ruled that Plaintiff conflated this statement, which in context referred to the burden of the moving party *on summary judgment* to produce evidence showing that party was entitled to judgment as a matter of law.

on the evidence admitted at trial.[36] Plaintiff's Motion reiterates his disagreement with this ruling, but the Motion does not put forth any new grounds for the Court to grant a new trial on this basis.[37]

The Court finds that Plaintiff's post-trial Motions fail to state grounds under Rule 59(a) for relief from the jury's verdict in favor of the State. Therefore, Plaintiff's Motion for a New Trial and Motion to Set Aside Verdict are **DENIED.**

**IT IS SO ORDERED.**

_____
Judge Vivian L. Medinilla

oc:    Prothonotary
cc:    All Counsel of Record (via e-filing)

---

[36] Tr. at 34:11-26:2.

[37] In many respects, Plaintiff's Motions rehash arguments already considered in earlier rulings of this Court. Under Rule 59(e), reargument of this Court's decision or opinions requires the moving party demonstrate "newly discovered evidence, a change of law, or manifest injustice." *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45, 55 (Del. Super. 1995). *See* DEL. SUPER. CT. CIV. R. 59(e). Rule 59(e) "places a heavy burden on a [party] seeking relief. . . ." *Kostyshyn v. Comm'rs of Bellefonte*, 2007 WL 1241875, at *1 (Del. Super. Apr. 27, 2007). Plaintiff's arguments, in so far as they seek to reargue the same issues this Court already ruled upon, fails to meet this elevated burden of proof for reconsideration of the Court's earlier decisions. *See id. See also Hessler, Inc. v. Farrell*, 260 A.2d 701, 702 (Del. 1969).

14